***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant was self-insured at the time of the injury.
4. Plaintiff's average weekly wage was $849.00, yielding a weekly compensation rate of $566.02.
5. Plaintiff's medical records have been stipulated into evidence.
6. Plaintiff last worked for defendant on 19 February 2001.
 *********** EVIDENTIARY RULINGS
On 30 December 2002, defendant filed a Motion for the Commission to Receive Further Evidence in which defendant sought to depose (1) Dr. Steven Sr. Clair, a physician who conducted an independent medical evaluation of plaintiff on 26 March 2002, pursuant to a claim plaintiff pursued with the Charlotte Firefighters Retirement System, and (2) Investigator Tim Williams who conducted surveillance of plaintiff between 18 June 2002 and 24 June 2002. This case was heard before the Deputy Commission on 19 February 2002. The record was held open at that time specifically for the receipt of the deposition testimony of Dr. Domagoj Coric, the only physician treating plaintiff whom the parties sought to depose. If defendant wishes to conduct further depositions of physicians who treated plaintiff subsequent to the hearing in this matter or investigators who may provide information regarding plaintiff's current condition, the proper forum in which to do so is by filing a Form 24 Application to Suspend or Terminate Compensation or to proceed pursuant to a claim of a change of condition. Therefore, in the discretion of the Full Commission, defendant's motion to reopen the evidentiary record in this case is denied.
 ***********
Based upon the competent evidence adduced at the hearing and reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 50 years old and had a high school education, plus a year and one half of courses in fire science at Central Piedmont Community College.
2. Plaintiff worked for defendant for 22 years. Prior to his employment with defendant, plaintiff spent eight years in the United States Marine Corp. In addition to working for defendant, plaintiff was a member of the Air National Guard.
3. Plaintiff's most recent job with defendant was fire fighter engineer. His job duties included maintenance of the fire truck and all the equipment on board. Plaintiff was also responsible for driving the truck to the scene of a fire and operating the truck's equipment while there. Plaintiff had performed that job for 12 years. In addition to his regular job duties, plaintiff was volunteered to compete in the Fire Fighters Muster, a competition where fire fighters demonstrate their skills.
4. Plaintiff had several injuries while in the line of duty. Defendant filed Form 19 Employer's Reports of Employee's Injury to the Commission for job related injuries suffered by plaintiff in 1981, 1988, 1991, 1997, and two in 2000. After all but the last injury, plaintiff was able to return to his full duties. Each of the previous injuries was covered under workers' compensation.
5. On 28 September 2000, plaintiff was removing his gear from the truck at the end of his shift. As he reached overhead to get his gear, he felt a sharp pain like a hot knife in the center of his lower back. Plaintiff immediately required assistance and was helped to his chief's office where an accident report was completed. The incident was witnessed by three fire fighters. Plaintiff was sent to Dr. David M. Peterson at OccMed, defendant's workers' compensation medical provider. Dr. Peterson noted that plaintiff had pain in his back and legs. Dr. Peterson treated him with medications and kept him out of work from 29 September 2000 until 11 October 2000. On 11 October 2000 he returned to work at full duty, but was mostly on phone watch.
6. Plaintiff and his wife took a cruise in November 2000 which had been planned prior to his injury in September. During the cruise, plaintiff reached across a dinner table and felt pain in his upper back. He described the pain as in the interscapular area, or between his shoulder blades. Plaintiff stated that he walked around the deck of the ship and then got into the ship's hot tub for a while and the pain subsided. Plaintiff did not seek medical treatment for the injury.
7. Plaintiff went on his own to Dr. Jerry Petty, a neurosurgeon in Charlotte. Plaintiff had developed symptoms of numbness and tingling and burning in his legs and feet. Dr. Petty examined him and ordered a CT scan. He diagnosed him with spondylolisthesis at L5-S1 and stenosis and referred him to Dr. Domagoj Coric for a surgical consult.
8. Dr. Coric reviewed his test results and offered plaintiff a choice between two courses of treatment; either continue with conservative treatment and physical therapy or undergo surgery to decompress and stabilize the area where the spondylolisthesis was evident. Plaintiff elected to have the surgery. Dr. Coric performed a decompression and fusion at the L5-S1 level on 20 February 2001.
9. Following surgery, after an initial improvement, plaintiff's symptoms gradually returned to their pre-surgery status. Dr. Coric originally thought that plaintiff would be able to return to work in three to six months. After 11 months, however, Dr. Coric was of the opinion that plaintiff would never be able to return to his former job. He determined plaintiff was at maximum medical improvement and gave him a 30% permanent partial disability rating to his spine.
10. Dr. Coric opined and the Full Commission finds that plaintiff's spondylolisthesis was a pre-existing condition which likely developed over 10 to 20 years, but that the accident on 28 September 2000 aggravated plaintiff's pre-existing condition resulting in the symptoms he described.
11. Dr. Coric stated in his deposition that plaintiff could not return to work as a fire fighter with his current back condition. Dr. Coric also opined that plaintiff could not handle a 40 hour a week, 8 hour a day job doing even light work. Dr. Coric explained that plaintiff's pain would prevent him from extended sitting, walking or standing.
12. Plaintiff was also diagnosed with depression after his surgery. Dr. Coric testified that he didn't expect plaintiff to require treatment for his depression. Dr. Coric is not a psychiatrist. There is insufficient evidence that plaintiff's depression is causally related to his 28 September 2000, injury or that medical treatment of said depression is needed.
13. Plaintiff was paid $444.06 per week beginning on 26 October 2001, for a number of weeks for accident and sickness benefits. Said benefits were funded by defendant.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury as a result of a specific traumatic incident which arose out of and in the course of his employment with defendant on 28 September 2000. N.C. Gen. Stat. § 97-2(6).
2. That as a result of the injury to his back, plaintiff suffered a total loss of wage earning capacity. Plaintiff is entitled to temporary total disability compensation from 20 February 2001 until such time as he is able to return to work, or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. The medical treatment plaintiff received as a result of his compensable injury by accident, including his surgery, was necessary to effect a cure, give relief and to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. Defendant is entitled to a credit for any benefits paid to plaintiff from company funded sickness and accident plans or disability plans. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff is hereby awarded temporary total disability benefits in the amount of $566.02 per week beginning 20 February 2000, and continuing until such time as he returns to work or further order of the Commission. Defendant is entitled to a credit for any benefits already paid to plaintiff through any company funded disability plans. Any benefits which have accrued to date shall be paid to plaintiff in a lump sum, subject to an approved attorney fee provided below.
2. Defendant is to pay for all medical treatment incurred or to be incurred as a result of plaintiff's 28 September 2002 injury by accident. Defendant is not responsible for the payment for any treatment of plaintiff involving depression.
3. A reasonable attorney's fee is approved for plaintiff's counsel and shall be paid as follows: plaintiff's counsel shall receive 25% of the accrued compensation due plaintiff under Paragraph 1 of this AWARD which shall be deducted from that sum and paid directly to plaintiff's counsel. In regards to future compensation, plaintiff's counsel shall receive every fourth compensation check.
4. Defendant shall pay the costs, including an expert witness fee of $350.00 to be paid to Dr. Domagoj Coric.
This the ___ day of August, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER